May it please the court, in his third request for counsel, Mr. DaSilva said, the guy was helping me, they moved him to the other side of the institution so he not be able to help me anymore. He also attached prison records showing that he read and wrote at a third grade level. The district court addressed neither fact and denied Mr. DaSilva's request for counsel the next day. Under this court's precedent, that failure, along with other decisions this court made, was a clear abuse of discretion. The abuse of discretion also prejudiced Mr. DaSilva. DaSilva fell on his head shortly after taking, becoming violently ill on Christmas Eve from taking an unknown medication. Without even speaking to him, Nurse DeYoung concluded that that dangerous situation could wait, perhaps until the morning, because Officer Rymarkiewicz, who is not a doctor, said DaSilva, quote, looked okay. That gross departure- But you know, there's this telephone communication with DeYoung who says, you know, if anything changes, call. Something does change. You know, he either slides down onto the floor again or falls again. There seems to be some conflict in the record about that. But he's in distress again, I'll just say. And she says, take him to the hospital. You know, it all, from the first fall to the time he's in the hospital, is an hour and a half. Correct, but I don't think that under this court's case is that that sort of cures the problem. So first of all- But he gets back to her and she's, you know, she's 30. She hasn't left her place, but maybe she's rationally made the decision, if the hospital's only five minutes away, he can get there much faster than she could go all the way to the prison and assess him. That could have been a longer period of time. If she had come in after the first- Yeah, if she'd come in after the first call, assessed him, he looked okay, so suppose, you know, we would say, well, even if she made a mistake, as long as she's exercising medical judgment, you know, it could have been longer. So I guess two points in response to that, Your Honor. First, we don't know from the record why it took her a half an hour, how far away she lived, those kinds of things, to receive. And she says, on one account, she says, I'm not even coming until tomorrow morning. On another account, she says, I'm going to come in. It'll take me a half an hour, but we know that when she's called an hour later, she's not there. So first of all, it's very unclear how long she sort of anticipated that he would take to- But we do know that the hospital's five minutes away. We do, and so in responding to his initial distress, the thing that she should have considered under the standard of care is, we have a situation where someone has consumed medication that we don't know what it is. He's become violently ill and started sort of vomiting, and he's now falling down and throwing up. My choice is, I can wait maybe a half an hour, maybe how long, to go in and see him myself and actually inspect him, or I can send her to the hospital that's five minutes away. And without the assistance of counsel, Mr. De Silva wasn't able to depose Nurse De Young about whether or not that decision was the right one, why she thought that it was appropriate, why she thought she could rely on Officer Remarkowitz's observations. So why is the layperson not able to I agree, Your Honor, and that's why I think that's actually not the question in this case. The question isn't whether or not they- But the point is, that's what Remarkowitz- So if Remarkowitz was conveying a medical diagnosis to De Young, we would all say, that's outside his bailiwick. He doesn't have- He's not a doctor. But if it's a lay kind of observation, bleeding looks like it's controlled, cut doesn't seem to need stitches, he's talking to people, he seems okay. Why is he not entitled to convey that information to Nurse De Young? So I guess there's two things to say. First, and it's unclear actually exactly who was conveying what to him. Officer Daniels' incident report indicates that Nurse De Young didn't treat Mr. De Silva. In fact, the security staff treated him because Nurse De Young wasn't available. Second, again, the injury is not just that he fell and hit his head. The injury is he has taken unknown medication, become violently ill, and is vomiting. A layperson is not competent to assess whether or not that situation, which is distinct from simply slipping and falling and hitting your head in your prison cell, requires immediate medical attention rather than just looking to see, oh- Does the record show that Officer Rymarkowitz was aware that this underlying medication problem had happened? It does. It indicates that there's actually disputed evidence, which the district court held against my client, despite the defendants conceding it, that it was disputed about how long Mr. De Silva had been sick that day. Mr. De Silva's testimony, and it's clear from the nurse's consultation report, was that he told them, I took the medicine around 8.30, I started throwing up, I became violently ill. So it's very clear from the nurse's consultation report that both Nurse De Young and Officer Rymarkowitz knew that at least Mr. De Silva thought that his situation got worse when he took the wrong medicine. And so that's why I think it's a much different kind of situation than just if he had tripped in his prison cell. The officer conveyed this information over the phone to the nurse, and he was deferring to her medical judgment. How could he be deliberately indifferent if he is deferring to her, which seems like something that's not contested in the record? So I think that it's a different, the problem is the kind of deference we're supposedly getting. What she says is not, I assess the situation carefully, in her incident report at least, her declaration with the lawyer's help later is somewhat different. She simply says, the officer said he was talking to people and that he, quote, looked okay. I don't think that Officer Rymarkowitz- So what part of lawyer, I mean I want to just redirect you a little bit since as I understand, all we're talking about here is whether counsel should have been appointed, but it was an abuse of discretion down the road, maybe not the first time when there hadn't been enough of a record. So there's only so much counsel could have done. Counsel, what could counsel have done that actually would have mattered? So I think there are two different things for each of the defendants. So take first Officer Rymarkowitz. I think counsel could have deposed him to find out, why did Officer Daniels say the security staff treated him because nurse wasn't available? You say you relied on Nurse de Young's advice and treatment, but did you not know that that was predicated entirely on your statement that he, quote, looked okay? How much did you talk to her? You can't blindly defer. A layperson should know that if you take the wrong medicine and become violently ill, that's a dangerous situation. And a layperson isn't entitled to defer on that. And then with respect to Nurse de Young, two specific things. First of all, under Wisconsin state law, Mr. De Silva only had to prove carelessness. And appointed counsel could have easily asked her whether or not she departed from the standard of care in how she responded to this incident, and also could have secured an expert. For deliberate indifference purposes, same thing. Why is there a different account about when you were coming in or not? Does that reflect the fact that maybe you knew that you should have come in earlier, that you should have come to the hospital? Who would have paid for the expert? I think appointed counsel will often pay for an expert as part of their responsibility to the court and their duty to the public. But there's no requirement, and sometimes it's too expensive. I think you would agree with that. I agree completely. This court has held in cases like Jackson and James, however, that in the prejudice inquiry and the abuse of discretion denial of counsel, that whether or not appointed counsel would have retained an expert is one of the So again, it's not just that he could have gotten an expert. So we shouldn't assume that automatically there would be no expert. We just have to say we don't know for sure there would be. And Mr. De Silva only has to prove a reasonable likelihood that he could have staved off summary judgment to win on this claim on the prejudice prong. Isn't it relevant that when your client went to the ER, the doctors there put a couple staples in, gave him some pain medications, and sent him back, that they didn't find any of these bigger issues that you're seeming to suggest? So it would certainly be relevant to damages in this case if Mr. De Silva's head injury wasn't particularly significant. I don't think that we can use a Christmas Day ER report as conclusive evidence that Mr. De Silva didn't suffer continued head trauma from this, and he has alleged and introduced evidence that he has continued to suffer from a number of head-related problems. Couldn't it be used to show that the timing was reasonable? I guess it depends on the time. By timing, I'm talking about the time from the incident in the prison until when he was taken to the ER. I think what that misses, though, is that the gap itself is an Eighth Amendment compensable problem. Leaving someone deliberately and unnecessarily subject to unnecessary risk is itself an Eighth Amendment violation. Mr. De Silva's second fall, in and of itself, could be a violation of the hospital, and that would have been adequate treatment for his first head injury. He should never have suffered the second head injury. He should never have been exposed to that risk during that time period. If there are no further questions, may I reserve the rest of your time? Okay, that's fine. You can reserve the rest of your time. Mr. Russomano. Good morning. May it please the Court. My name is Anthony Russomano. I represent the appellees who are two Wisconsin Department of Corrections employees. So I have a couple of questions focusing on this appointment of counsel issue. First of all, it seems to me that the effects of a concussion are not necessarily things that lie within the expertise of an ordinary lay person. If I walked past somebody with a broken leg, maybe I would recognize that they have a broken leg, but I'm not sure that I would have any idea about a concussion. And so I'm a little disturbed by the lack of evidence in the record to show whether the delay, the hour and a half delay, if you want to put it that way, in getting some treatment for him, and thereby leading to the second fall, which you don't seem to concede is a fall, but I think we have to take as a fall, whether that was medically prejudicial. And just to put my cards on the table, the other thing that bothers me is looking at the magistrate judge's opinion. Toward the end, you know, he says, for example, on page 13, in any event, De Silva has not set forth any medical evidence to establish that this delay had any detrimental effect on him, which is fatal to his claim. And then when he turns to the Med-Mal issue on page 14, he says, well, there's no expert evidence, therefore, the court has to dismiss his Med-Mal claim. That sure looks like the lack of an expert is having an impact on the ruling, and I don't see why we should assume that counsel would not have found an expert, particularly since, you know, there might be some opportunity for attorney's fees later on in a case of this sort. So what are we to do with these two acknowledgments by the magistrate judge himself that the lack of an expert is important? Well, Your Honor, and please leave me back if I don't get all of your questions, but I think if we're talking about whether an expert would have mattered, we're talking about under the counsel inquiry, about the second inquiry, about whether he was prejudiced or not. So I just want to make that clear that we don't agree that the judge misused his discretion at the time the counsel requests were made, which was early in the case. So I think when we're talking about whether an expert would have mattered, we're thinking now that, okay, assuming. Well, one of the later requests, I mean, he does request quite a few times, and I'm not worried about the first time because he didn't talk about who he had contacted or anything. So I'm certainly not concerned about that. But as the case matures, you know, he still is asking, and, you know, I've looked at some of his written things. They're not the worst I've ever seen. They're certainly not the best, but. Agreed, Your Honor. And just to, before I go on to your question, there were three proper motions for counsel. The third was in June of that year, which was two weeks after the scheduling order was put in place, and two and a half weeks after the defendant's answer. So that third motion was quite early in the case still. And he's still begging through these letters. I think you're being a little picky about what those letters count as. He's very clear in the letters. He's not hiding the ball. Be that as you may, Your Honor, and I could address those letters separately, but just to get to the expert question that you asked originally, for the constitutional claim, the claim that puts this case in federal court, no, this isn't a case that would require an expert. But the magistrate judge clearly says, you can't show that anything bad happened to you because you don't have medical experts, and I'm holding that against you, roughly. In any event, De Silva has not set forth any medical evidence to establish that this delay had any detrimental effect on, which is fatal to his claim. When he's talking about his claim there, he's talking about the deliberate indifference claim. Sure, and I think that's a bonus reason why his claim fails. You would have to show deliberate indifference that a defendant was new of a risk and was as deliberately indifferent to it, was criminally reckless in ignoring it. And one other defense, so you say, no, that wasn't true. A different defense would be, and there was no detrimental effect. If there's no detrimental effect, then who cares if you were deliberately indifferent? So maybe that's what the magistrate was getting at, but that's not the only way to analyze the federal claim. And to that point, though, Your Honor, I think the magistrate could have been clearer, but the record reveals only one set of medical evidence from anyone. Mr. De Silva did put in medical evidence. It was the same medical evidence that the defendants put in because it was only one. Well, those are his records, right, that he has. He's frustrated at first he can't get them, but then he does get them. He does get them. And there's only one piece of medical evidence that mattered. It's really a historical piece of evidence. It's not really expertise. It's because it's from a outside hospital visit, not by the state. This document's not created by a defendant that says, at the time, an hour and a half after his initial fall, what his status is. And there's no way to go back in time now and redo that CT scan or analysis. It's just true. That's what the ER said at the time, or the hospital said at the time, that everything looked fine. The CT scan was fine. He was alert. He was oriented. He was walking. He was not bleeding. This does not scream out emergency. It does not scream out a life-threatening situation. What he had was a one-centimeter laceration and a concussion, but he was awake and doing okay. So that is what happened at the time. That's evidence both sides put in. And it shows, importantly, for the federal claim especially, is that this did not present as an emergency. Nurse DeYoung and Officer Rymarkowitz were right. When they said, let's, the nurse, the young, essentially said, let's wait and see, and then they waited an hour and took him into the hospital. The hospital said, essentially, let's also wait and see, and they said, come back in a week. But they do take him to the hospital after the second fall. That's correct. I mean, he's throwing up. He's falling down. He's not in good shape. I mean, I know it's Christmas Eve. It's the wrong time to get sick, but it's troubling. It turns out that maybe they didn't need to, but they did, and it's good that they did. I mean, that's not a bad thing. Well, they stapled his head closed. I mean, that doesn't suggest, I'm sure they didn't do that just for the fun of it. That's true, Your Honor. Because he needed it. But his life wasn't in danger. They didn't do brain surgery. They didn't do any kind of life-saving measures for anything, including this allegation that he was given the wrong medication. He was given no treatment at the hospital for that. The doctors at the hospital apparently did not think that was an issue. So I think there are some cases where it is muddy, and it's difficult to suss out what's going on. But this case, getting back to the counsel question, really isn't one of them. It's unusually straightforward for a deliberate indifference medical claim because we're talking about two defendants, one night, about an hour and a half, and we know right after that event at the hospital what the medical diagnosis was. There's not many cases that are that clean. So there's never any evidence that's developed that this hour and a half delay had medical consequences, other than the second fall, I suppose. Well, that second fall, the evidence is, and Mr. De Silva's allegations, that it reopened the same cut, not that he suffered a new wound. But that's right. And when he got to the hospital, they put the stitches in, but otherwise he was fine. So there could be no, in that span, there's no plausible damage or harm because he was fine when he got to the hospital. So it's hard to conceive what that difference would possibly be, much less that it's reasonably likely an attorney would hire an expert that actually could point to something from 2013 that he thinks could have happened. So the only harm was the cut reopening and the bleeding? It reopened, it slid against the wall. I think he puts it a couple of different ways in his filings. But yeah, he reopened the cut. It's not the residual effects of the concussion and vomiting or memory loss or anything like that because the doctors didn't discern any of that? Well, at the hospital, he didn't have an emergency situation between the time when he fell and when he got to that hospital. And that was the only events that our defendants are involved in. If there's later treatment he's had involving other folks, then that's not part of this case. I don't know if he has issues with that, but that's not this case. One of the issues he raised with the magistrate judge for a new counsel was the fact that he was relying on this jailhouse lawyer. And the jailhouse lawyer had left the particular facility he was at, so he no longer had that service. The magistrate judge didn't address that particular argument, or it didn't appear to in the order. Why isn't that problematic here? Well, Your Honor, maybe I'll break it down. The jailhouse lawyer topic was raised in his first request for appointment that didn't have the required showing that he made it. Correct, but I believe he raised it again later on. And then the second request, he did not raise it. The third request, he said, my jailhouse lawyer is gone. Yes. But that request itself was not beautifully written, but it was coherent. You can understand what he was asking for and what he was saying, as were the other submissions around that time. So Mr. De Silva is saying, my jailhouse lawyer is gone, but he's also, at the same time, submitting something that's comprehensible. But the judge didn't address it. Not directly. The judge said, your filings are comprehensible. So indirectly, he's saying, you can do it. Whatever the reason is, you can do it. And I think that's what matters under the Pruitt analysis. Can that plaintiff do the job in light of the complexity of the case? This case is not very complex in the grand scheme of things, and Mr. De Silva could do it. And after that third request, where he said, my jailhouse lawyer is gone, there was a lot of case after that that he was working on. He got his documents. He got some answers to interrogatories. He filed a summary judgment brief, about 20 pages long, about the right things. So he could do it. It wasn't maybe beautifully done, but he could do it. And if there's nothing further, your honors. One point, I will make out the time difference. Everyone agrees that it was 1030 when the first defendant became involved. That was in the complaint. The earlier time frame was maybe involving other folks at the institution, but not at the institution. That's why I asked about Ray Markowitz's knowledge, and then I suppose by extension to Young's, of this alleged medication error. Their first involvement was at 1030. That's in all the documents in the complaint. It has the same time frame. So other folks would have given out medication if that even happened, but they're not in this case. Thank you. All right. Thank you very much. Mr. Johnson. Thank you. The defendants defended a district court decision that doesn't exist in this case. First, to start with, abuse of discretion. Counsel admits the district court never examined specifically whether or not Mr. DeSilva was competent to litigate his case on his own without the assistance of his counsel. Under McCaw, that's a straightforward abuse of discretion. The very same facts in McCaw where the court simply says, your filings look fine without actually assessing, are these your filings or are these your jailhouse lawyer's filings? So that's abuse of discretion clearly under this court's precedent. Second of all, the defendant's argument seems to be that Mr. DeSilva loses because the doctors at the hospital later conclude that he couldn't show any injury. But as your honor pointed out, that's not what district court said. District court said, there's no extra medical evidence in this case to show that that harm existed. Of course, if Mr. DeSilva had counsel, he could have gotten an expert testimony and then shown that not only was the second fall itself an injury, but who knows what the consequences long term are from a second fall that re-injures and re-aggravates a head injury. And so with the assistance of counsel, Mr. DeSilva had a reasonable chance of staving off summary judgment, and without it, he didn't. All right. Thank you very much. And I believe you took this by appointment, so we appreciate your assistance to the court. Thanks as well to the state. The case is taken under advisement.